983 S.W.2d 93 (1998)
335 Ark. 85
K.M., Father of J.M., Minor, Appellant,
v.
STATE of Arkansas, Appellee.
No. 97-1116.
Supreme Court of Arkansas.
November 12, 1998.
*94 Sharon Carden Streett, Cheryl Vogelpohl Upshaw, Little Rock, for Appellant.
Winston Bryant, Atty. Gen., Kelly S. Terry, Asst. Atty. Gen., Little Rock, for Appellee.
CORBIN, Justice.
Appellant J.M., a minor, through his father K.M., appeals the judgment of the Craighead County Chancery Court adjudicating him delinquent and sentencing him to one year of probation, community service, continued counseling, and fines. The Arkansas Court of Appeals certified this appeal to us; hence, jurisdiction is pursuant to Ark. Sup.Ct. R. 1-2(d). Appellant argues on appeal that the trial court erred by not allowing and considering evidence of his mental disabilities to determine if he was competent to stand trial, if he had the required intent to commit second-degree battery, and if he was capable of conforming his behavior to the requirements of the law at the time of the offense. We affirm.
The record reflects that on September 6, 1996, the State filed a delinquency petition in juvenile court, alleging that Appellant had committed second-degree battery against his teacher, Stacey Poole, and other school personnel[1] on September 4, 1996. Appellant, who was then age twelve, was a student in Poole's self-contained classroom for students with severe mental disorders at the Jonesboro Sixth Grade Academic Center. Appellant has an extensive history of severe emotional and mental disorders, including attention deficit hyperactivity disorder, oppositional defiant disorder, impulse control disorder, pervasive developmental disorder, bipolar disorder, hypomania, specific learning disabilities, depression, paranoia, and possible psychosis. Appellant has undergone treatment since he was a toddler, consisting of long-term and short-term treatments in mental institutions, behavioral therapy, and numerous medications.
During the two-day hearing on the petition, the State presented evidence that Appellant had left Poole's classroom and refused her instruction to return. Appellant had earlier talked about a neighbor boy molesting him and had become increasingly agitated throughout the morning. Poole called the school principal, Brad Faught, for assistance and took the rest of her students to the cafeteria. In response to Appellant's request to see the school counselor, Faught told him that the counselor was off campus at the time but that he could speak with her when she returned. Faught also called Appellant's mother, who instructed him to tell Appellant that if he followed instructions, he would be allowed to attend a ball game, but that if he did not follow instructions, he would not be allowed to go. Appellant indicated that he did not want them to call his mother, and then proceeded to knock over some furniture and scribble on some desks. Appellant also sprayed a bottle of "409" at a coach who had arrived to help. In an effort to calm Appellant, Faught eased him to the floor from behind. Poole, who had returned to the classroom, approached Appellant while he was cursing and flailing his arms. Appellant then hit Poole in the face and chest. Eventually, Appellant's mother arrived and gave him medicine and helped him straighten up the classroom after he was calmer. Poole testified that she took pain medication for her injuries the remainder of that afternoon and night.
In response to the State's motion for discovery, Appellant gave notice that he intended to raise the affirmative defense of not guilty by reason of mental disease or defect. Appellant also moved to stay the proceedings for the purpose of ordering a psychiatric evaluation prior to the delinquency hearing. *95 The trial court denied the motion. The trial court also denied Appellant's request to consider his mental disorders in the adjudication phase of the hearing, in the context of an insanity defense, stating that it was not available in a juvenile proceeding. During the dispositional phase of the hearing, however, the trial court heard testimony from Appellant's psychiatrist Dr. Larry Felts, Appellant's mother Rosemary Hughes, Poole, Faught, and Coach Nathan Wright. Felts, Hughes, and Poole testified about Appellant's various disorders and manifestations, as well as their efforts to manage his disabilities.
The trial court ultimately concluded that Appellant had committed battery in the second degree against Poole, by purposefully causing physical injury to one he knew to be a teacher on school grounds pursuant to Ark. Code Ann. § 5-13-202(a)(4) (Repl.1997). The trial court adjudicated Appellant delinquent pursuant to Ark.Code Ann. § 9-27-303 (Repl.1998) and sentenced him to one year of supervised probation. The trial court further assessed court fees of $35 and probation fees of $15 per month for the duration of Appellant's probation. Additionally, Appellant was ordered to perform twenty-four hours of public service, supervised by his mother, and to continue his therapy.

I. Competency to Stand Trial
Appellant first argues that the trial court erred when it refused his motion to stay the proceedings for a psychiatric examination, and that under Ark.Code Ann. § 5-2-302 (Repl.1997), he was entitled to such an examination to determine if he was competent to stand trial. We do not reach the merits of this argument, as it is not clear from Appellant's abstract that the issue of his competency to stand trial was raised below or ruled upon by the trial court. The only reference in the abstract to a motion to stay proceedings was directed at staying the proceedings pending the outcome of a "Due Process hearing," which was apparently already under way. There is no similar motion pertaining to a psychiatric examination under section 5-2-302. It is well settled that the appellant bears the burden of producing both a record and an abstract sufficient for appellate review. Sherwood v. Glover, 331 Ark. 124, 958 S.W.2d 526 (1998); Porter v. Porter, 329 Ark. 42, 945 S.W.2d 376 (1997). Where the abstract does not reflect that the argument was made in the trial court, we will not reach the merits of the argument on appeal. Barber v. Watson, 330 Ark. 250, 953 S.W.2d 579 (1997).

II. Intent
Appellant argues that the trial court failed to admit or consider evidence of his mental state in determining that he had the requisite intent, or mens rea, to commit second-degree battery. Specifically, Appellant argues that the trial court erred by failing to consider evidence of his mental state to negate the required intent to commit the crime. He contends that the trial court did not make a finding that he had the requisite mental state to commit the crime. We disagree.
Section 5-13-202(a)(4)(B) provides in relevant part that one commits battery in the second degree if:
(4) He intentionally or knowingly without legal justification causes physical injury to one he knows to be:
. . . .
(B) A teacher or other school employee while acting in the course of employment[.]
We view Appellant's argument as a challenge to the sufficiency of the evidence with respect to the element of intent required by section 5-13-202(a)(4)(B). In reviewing a juvenile criminal case, we look at the record in the light most favorable to the State to determine whether there is substantial evidence to support the conviction. Garcia v. State, 333 Ark. 26, 969 S.W.2d 591 (1998). This court has held that the only specific intent required to commit second-degree battery is the intent to cause physical injury. See Purifoy v. State, 307 Ark. 482, 822 S.W.2d 374 (1991); Holmes v. State, 288 Ark. 72, 702 S.W.2d 18 (1986). We conclude that the State presented substantial evidence below to support the trial court's finding that Appellant had the requisite intent to commit the crime.
The trial court considered evidence of Appellant's mental state in determining *96 whether he "intentionally or knowingly" committed the crime. The trial court heard Dr. Felts's testimony that Appellant was able to control his physical actions, and that he thought Appellant could understand options when presented to him. The trial court also considered Faught's testimony that Appellant understood the two options his mother gave him concerning whether he would get to go to the ball game, because Faught testified that Appellant had started toward the classroom and asked them not to call his mother again. The trial court also heard testimony from Appellant's mother and Poole, describing his various mental and emotional disorders. In sum, the trial court's ultimate conclusion that Appellant had purposefully caused Poole's physical injury was made after it considered evidence of Appellant's mental and emotional disabilities. We therefore affirm on this issue.

III. Insanity Defense
Appellant argues that the trial court erred when it refused to admit and consider evidence of his mental state during the adjudication phase of the hearing to determine whether he was able to conform his conduct to the requirements of the law at the time of the incident, as provided under Ark.Code Ann. § 5-2-312 (Repl.1997). Appellant asserts that the trial court's refusal to allow such evidence constitutes a violation of his rights to equal protection under the Fourteenth Amendment.
The United States Supreme Court has recognized that an accused has a constitutional right not to stand trial if he or she is mentally incompetent at the time of trial. See Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). In contrast, there does not appear to be a constitutional right to assert that one was insane at the time of the crime. See Medina v. California, 505 U.S. 437, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992); Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968). Thus, a defendant may assert the insanity defense only if the State has conferred that right by statute. Unquestionably, the Arkansas General Assembly gave criminal defendants in our circuit courts the right to assert the insanity defense when it passed Act 280 of 1975, which provides in relevant part that:
It is an affirmative defense to a prosecution that at the time the defendant engaged in the conduct charged, he lacked capacity, as a result of mental disease or defect, to conform his conduct to the requirements of law or to appreciate the criminality of his conduct.
(codified at section 5-2-312). The issue presented by this case is whether the General Assembly also intended for this act to apply to juveniles during the adjudication phase of a delinquency proceeding in juvenile court.
The Equal Protection Clause of the Fourteenth Amendment provides that "No state shall make or enforce any law which shall... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. 14, § 1. Before we can address Appellant's equal-protection argument, we must first decide whether the General Assembly intended for section 5-2-312 to apply to juveniles. If we conclude that section 5-2-312 does not apply to juveniles, we then proceed to the second question of whether the State's decision to grant that statutory right to one class of people to the exclusion of another is a violation of the Equal Protection Clause.
In order to answer the first question, it is necessary to examine our statutes and the policies that influenced their passage. Arkansas has two distinct systems that are governed by two separate acts: (1) the Arkansas Criminal Code, Ark.Code Ann. § 5-1-101 to 5-77-301 (Repl.1997), which governs proceedings in the circuit court, and (2) the Arkansas Juvenile Code, Ark.Code Ann. § 9-27-101 to 9-33-206 (Repl.1998), which governs proceedings in the juvenile court. Arkansas's insanity-defense statute, section 5-2-312, is contained in the Criminal Code and there is no corresponding or similar provision in the Juvenile Code. Thus, the language of both Codes must be scrutinized to determine whether the General Assembly intended to incorporate the insanity defense into the Juvenile Code. After careful examination, we find no such language.
*97 The first rule of statutory construction is that the intent of the legislature must be gleaned from the plain and ordinary meaning of the words used in the statute. Stapleton v. M.D. Limbaugh Constr. Co., 333 Ark. 381, 969 S.W.2d 648 (1998); Kildow v. Baldwin Piano & Organ, 333 Ark. 335, 969 S.W.2d 190 (1998). There is, however, nothing in the plain meaning of the language used in section 5-2-312 indicating whether the General Assembly intended it to apply to proceedings in the circuit court, juvenile court, or both.
Because the statute itself provides no guidance on the issue, we must next turn to other statutes dealing with the insanity defense, as statutes relating to the same subject must be construed together and in harmony, if possible. See Johnson v. State, 331 Ark. 421, 961 S.W.2d 764 (1998); Stapleton, 333 Ark. 381, 969 S.W.2d 648. Arkansas Code Annotated § 5-2-305 (Repl.1997), which provides for the psychiatric examination of a defendant who intends to assert the insanity defense, begins with the proclamation that it applies "Whenever a defendant [is] charged in circuit court[.]" Likewise, Ark.Code Ann. § 5-2-314 (Repl.1997) declares that a "circuit court" shall make certain findings once a "defendant is acquitted on the ground of mental disease or defect[.]" When read in conjunction with these two statutes, it appears that the General Assembly intended for section 5-2-312 to apply only to proceedings in the circuit court.
Next, we turn to the language of the Juvenile Code to determine whether the General Assembly intended to grant juveniles a statutory right to the insanity defense. After carefully examining the Juvenile Code, we find no provision therein that incorporates, either specifically or by reference, the insanity defense contained in the Criminal Code. In fact, the only provision in the Juvenile Code that even remotely mentions the insanity defense is section 9-27-320, which prescribes when a juvenile may be fingerprinted and photographed and when that information may be used by the State or released to the public. In particular, section 9-27-320(b)(3)(B) provides that:
When a juvenile departs without authorization from the State Hospital, if at the time of departure the juvenile is committed as a result of an acquittal on the grounds of mental disease or defect for an offense for which the juvenile could have been tried as an adult, the Director of the Division of Mental Health Services shall release to the general public the name, age, and description of the juvenile and any other pertinent information the director deems necessary to aid in the apprehension of the juvenile and to safeguard the public welfare. [Emphasis added.]
Pursuant to section 9-27-318, a juvenile can be "tried as an adult" only if he or she is at least fourteen years of age and meets certain criteria specified in the remainder of the statute. It is undisputed that Appellant was twelve years old at the time of the alleged battery, and thus he could not have possibly been tried as an adult. Hence, there is no reason for us to decide whether the above language implicitly grants a juvenile, who is at least fourteen years old, the right to assert the insanity defense because such a holding would clearly have no impact on Appellant and thus would be advisory. See Central Emergency Med. Servs., Inc. v. State, 332 Ark. 592, 966 S.W.2d 257 (1998); Stilley v. McBride, 332 Ark. 306, 965 S.W.2d 125 (1998) (holding that an issue is moot if the judgment would have no practical effect on the litigant, and thus a decision rendered thereon would be advisory).
In sum, the insanity defense is a statutory right that can only be conferred by the General Assembly, and not by this court. We find nothing in either the Criminal Code or the Juvenile Code that suggests that the General Assembly intended to confer this statutory right to juveniles under the age of fourteen during the adjudication phase of a delinquency proceeding. Whether section 9-27-320(b)(3)(B) implicitly gives juveniles ages fourteen and over the right to assert the insanity defense is an issue to be resolved at some future date. Accordingly, we affirm the trial court's ruling that Appellant did not have a right to assert the insanity defense during the adjudication phase of his juvenile-delinquency proceeding.
*98 The remaining issue raised by Appellant is whether this State, acting through the General Assembly, violated the Equal Protection Clause when it granted adults, but not juveniles, the statutory right to assert the insanity defense. We do not reach the merits of this argument, as Appellant has not properly preserved it for appeal.
It is well settled that the record on appeal is limited to what is abstracted. Morse v. Sentry Life Ins. Co., 332 Ark. 605, 967 S.W.2d 557 (1998); Hooker v. Farm Plan Corp., 331 Ark. 418, 962 S.W.2d 353 (1998). The only summary we have in the abstract of the equal-protection argument raised below is the following:
Earlier I filed a Notice that we intended to raise the defense of mental disease or defect and there has been no mental examination ordered. The Arkansas Rules of Criminal Procedure apply to juvenile proceedings and those are procedures that are available under those Rules.
I think failure to consider that or to allow that to be considered is a violation of equal protection, in that it discriminates against children with disabilities like [Appellant's], who don't have those capacities, but have no way to bring that before the Court in the adjudication hearing.
... This is a significant issue for this child; he is very ill, a child with really significant emotional and mental problems. [Emphasis added.]
From this language, it appears that Appellant argued below that section 5-2-312 unconstitutionally discriminates against only those juveniles with preexisting mental disabilities, i.e., juveniles who suffered from a mental disease prior to the alleged offense. On appeal, however, he argues that the statute discriminates against all juveniles tried in juvenile court regardless of whether they suffered from a mental disease prior to the commission of the offense. This is a significant distinction because section 5-2-312 only requires that the accused be insane "at the time the defendant engaged in the conduct charged." It does not require any proof that the defendant suffered from a mental disease or defect prior to the commission of the crime. Hence, the argument Appellant raises on appeal is materially different from the one he made before the trial court. As we have said on numerous occasions, we will not address arguments, even of a constitutional nature, that are raised for the first time on appeal. Tabor v. State, 333 Ark. 429, 971 S.W.2d 227 (1998); Beyer v. State, 331 Ark. 197, 962 S.W.2d 751 (1998).
Affirmed.
NOTES
[1] Appellant was convicted for only the count against Poole.